IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL FUSCALDO,

        Petitioner,

    v.

PATRICK NOGAN, THE ATTORNEY
GENERAL OF THE STATE OF NEW
JERSEY, and STEPHANIE DAVIS-ELSON,

        Respondents.

HON. JOHN MICHAEL VAZQUEZ


Civil Action
No. 16-4198 (JMV)


**OPINION**

**VAZQUEZ, District Judge:**

## I. INTRODUCTION

Presently before the Court is the second petition pursuant to 28 U.S.C. § 2254 ("the Second Petition") (ECF No. 1) of Michel Fuscaldo ("Petitioner"). Petitioner is currently serving an aggregate term of life imprisonment with thirty years of parole ineligibility. This imprisonment follows his 1996 trial in which a jury found him guilty of: first degree murder, second degree possession of a handgun for an unlawful purpose, third degree unlawful possession of a handgun, and fourth degree unlawful disposal of a firearm. (ECF No. 1-4 at 8; *State v. Fuscaldo*, No. A-3951-12T3, 2014 WL 9883917, at *1 (N.J. Super. Ct. App. Div. Oct. 16, 2015).)

For the reasons stated herein, the Court denies the Second Petition with prejudice and no certificate of appealability shall issue.

## II. BACKGROUND

[1]On June 9, 1993, a Hudson County Grand Jury charged Petitioner with the murder of Craig

---

[1] The factual background is taken from a written opinion by the Appellate Division of the Superior Court of New Jersey, deciding Petitioner's appeal of the denial of this third petition for post-

Haddock ("the Victim") in violation of N.J. Stat. Ann. § 2C:11–3a(1)-(2); third degree unlawful

possession of a handgun in violation of N.J. Stat. Ann. § 2C:39–5b; second degree possession of

a handgun for an unlawful purpose in violation of N.J. Stat. Ann. § 2C:39–4a; first degree

conspiracy to murder the Victim in violation of N.J. Stat. Ann. § 2C:5–2; and fourth degree

unlawful disposal of a firearm in violation of N.J. Stat. Ann. § 2C:39–9d. *Fuscaldo*, 2014 WL

9883917, at *1.

Petitioner was tried before a jury. The evidence against him was circumstantial. *State v.

Fuscaldo*, 2010 WL 2990813, at *2 (N.J. Super. Ct. App. Div. Aug. 2, 2010), *certif. denied*, 15

A.3d 21 (N.J. 2011). The Victim was last seen at about 3:15 a.m. on Saturday, January 22, 1993,

leaving a bar in a vehicle driven by Petitioner. Nicholas DiNorscio was also a passenger in the

vehicle. When the Victim did not return home that night or the next day, his girlfriend and family

members sought to locate him. Petitioner's subsequent conduct was evasive and inconsistent with

his being a good friend of the Victim. He refused to assist the Victim's girlfriend and family

members in filing a missing persons report. He claimed he did not feel well. There was also some

evidence that Petitioner was jealous of the friendship between his wife and the Victim. Petitioner's

story about when he had last seen the Victim was also inconsistent with the State's evidence. *Id*.

In addition, bullets were secured from the Victim's body and shell casings were found in

the vicinity of his body. Although Petitioner initially denied to the police that he had a weapon,

law enforcement learned that Petitioner owned a nine-millimeter Glock model 19 firearm that he

had purchased in 1991. Instructions for the use of a Glock firearm, its owner's manual, and other

---

conviction relief ("PCR"). State court factual findings are presumed correct unless rebutted by
clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As Petitioner has not rebutted the
factual findings of the Superior Court of New Jersey by clear and convincing evidence, this Court
relies on those findings.

related materials were found in Petitioner's home during a search conducted pursuant to a warrant. The gun though was never located. *Id*.

At trial, two ballistics experts testified. Sergeant John Meyers testified that the shell casings found by the body had been fired from a Glock model 19 firearm because they had rectangular markings that were unique to that firearm. As to the bullets found in the body, James Dobak, a firearm identification technician (ECF No. 15-3 at 12), opined that only a Glock firearm produces the polygonal rifling evidenced on the bullets. *Fuscaldo*, 2014 WL 9883917, at *1.

On April 4, 1996, a jury found Petitioner guilty of first degree murder, second degree possession of a handgun for an unlawful purpose, third degree unlawful possession of a handgun, and fourth degree unlawful disposal of a firearm. *Id*. The jury acquitted him of first degree conspiracy to murder. The trial court denied Petitioner's motion for a judgment of acquittal or alternatively for a new trial. On May 10, 1996, the court sentenced Petitioner to an aggregate term of life imprisonment with thirty years of parole ineligibility. *Fuscaldo*, 2014 WL 9883917, at *1.

Petitioner appealed, arguing the evidence presented by the State was legally insufficient to sustain his conviction. He claimed that the State did not prove he actually killed the Victim. *Id*. He also argued that: the trial court violated his constitutional right to a fair trial by barring cross-examination on possible mob involvement in the Victim's murder; the trial court erred in admitting evidence about one of Petitioner's statements elicited in violation of his Fifth Amendment rights; and the trial court erred in failing to charge the jury on passion/provocation. (ECF No. 1-4 at 10-11.) The Appellate Division rejected these arguments and affirmed Petitioner's conviction in an unpublished opinion. *Fuscaldo*, 2014 WL 9883917, at *1.

On November 17, 1998, Petitioner filed with this Court his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("First Petition"). (ECF No. 1-3 at 10.) The First Petition

asserted three claims: (1) Petitioner's conviction was obtained with constitutionally insufficient evidence; (2) the trial court violated Petitioner's constitutional right to a fair trial by barring cross-examination implicating Tommy DiNorscio as the actual shooter; and (3) Petitioner's conviction was obtained by using statements obtained in violation of his Fifth Amendment rights. *Id.* On July 16, 1999, this Court denied the First Petition. (*Id.* at 1, 12.) On October 23, 2000, the United States Court of Appeals for the Third Circuit denied Petitioner's request for a certificate of appealability. (ECF No. 1-5 at 1; *Fuscaldo*, 2014 WL 9883917, at *1.)

On April 30, 2001, Petitioner, represented by private counsel, filed his first PCR petition. He asserted ineffective assistance of counsel ("IAC") claims. In support, Petitioner claimed his trial attorney was "saddled with a monumental conflict of interest" involving co-defendant DiNorscio, rendering counsel ethically incapable of providing independent representation. *Fuscaldo*, 2014 WL 9883917, at *1. The PCR court conducted an evidentiary hearing on November 7, 2002. A total of five witnesses testified, including Petitioner, his trial counsel, and the attorney who represented DiNorscio. *Id.*

On February 13, 2003, the PCR judge issued an oral opinion denying Petitioner's PCR petition. The PCR judge found Petitioner's trial counsel and DiNorscio's trial counsel occupied a common professional office area and at times shared clerical support staff. Despite this association, Petitioner did not present sufficient competent evidence establishing his trial counsel had a conflict of interest during the time he represented Petitioner. *Id.* Applying the standard established by the New Jersey Supreme Court in *State v. Bellucci*, 410 A.2d 666 (N.J. 1980), the PCR judge concluded Petitioner had not presented any grounds requiring a new trial. *Fuscaldo*, 2014 WL 9883917, at *1-2. The PCR judge also denied as untimely Petitioner's request that the identity of the confidential informant be revealed. *Id.* In an unpublished per curiam opinion, the Appellate

Division affirmed the PCR judge's decision. *Id*. The New Jersey Supreme Court denied certification. *State v. Fuscaldo*, 851 A.2d 649 (N.J. 2004); ECF 1-5 at 36.

On or about February 8, 2008, Petitioner filed a second PCR petition. Appearing pro se, he once again claimed IAC by trial counsel. This time though, Petitioner specifically listed a number of alleged errors committed by trial counsel. He again requested an evidentiary hearing. *Fuscaldo*, 2014 WL 9883917, at *2. In support, Petitioner included an affidavit from James Edward Hamby. Hamby holds a Ph.D. in forensic science-firearms identification and contradicted Dobak's testimony. *Fuscaldo*, 2010 WL 2990813, at *2. Hamby stated that a Glock is not the only weapon that uses polygonal rifling. Petitioner's second PCR petition argued that his trial counsel was ineffective for failing to obtain a ballistics expert to present this contrary testimony. He also claimed that his appellate and PCR attorneys were ineffective for failing to raise this issue. *Id*.

By order dated September 24, 2008, the same judge who decided the first PCR petition denied Petitioner's second PCR application. *Fuscaldo*, 2014 WL 9883917, at *2; ECF No. 1-6 at 23-24. In a letter attached to the September 24 order, the judge advised Petitioner that his second PCR petition was time-barred under New Jersey Rule of Court 3:22–12(a). It was untimely because Petitioner filed it more than five years after his May 13, 1996 judgment of conviction. The judge stated that Petitioner had not presented any evidence "demonstrating [that] your failure to timely file this petition was due to excusable neglect." *Fuscaldo*, 2014 WL 9883917, at *2. The judge reminded Petitioner that "you raised, and then later withdrew, your [IAC] contention in your first [PCR] application (May 2001)[.]" *Id*. Under these circumstances, the judge concluded Petitioner was not entitled to court-appointed counsel to prosecute his second PCR petition. *Id*.

Petitioner appealed the denial of his second PCR petition, raising the following arguments: the trial court should have considered his second PCR application on the merits; Petitioner's IAC

claims were meritorious; Petitioner was entitled to an evidentiary hearing on his IAC claims; the trial judge had not made sufficient findings of fact; the trial court should have granted his motion for discovery and counsel appointment; N.J. Ct. R. 3:22-4 allows for time-bar relaxation; the State mischaracterized the grounds upon which Petitioner sought relief; Petitioner stated prima facie IAC claims; and grounds existed to vacate his sentence. *Fuscaldo*, 2010 WL 2990813, at \*1-2. On August 2, 2010, the Appellate Division affirmed the PCR court's decision rejecting the second PCR petition. *Fuscaldo*, 2010 WL 2990813, at \*1. The Appellate Division noted at the outset that Petitioner's second PCR petition was untimely. *Id*. at \*3. Petitioner filed it almost twelve years after his conviction, and he did not demonstrate extraordinary circumstances to excuse his delay[2]:

> [D]efendant has not presented a sufficient reason for the delay to justify this extraordinary relief. He knew at the time of his trial and certainly after his conviction the importance of the ballistics evidence, and nothing precluded him from obtaining a rebuttal report in the five years after his conviction as he has done now. Thus, we do not find excusable neglect.

*Fuscaldo*, 2010 WL 2990813, at \*3. The Appellate Division also specifically rejected Petitioner's arguments attacking alleged deficiencies in the State's ballistics evidence at trial. *Id*. at \*4 ("[T]he shell casings still provide unrefuted evidence that the murder was accomplished with a Glock weapon"); *Fuscaldo*, 2014 WL 9883917, at \*2. On October 15, 2010, the Appellate Division denied reconsideration. (ECF No. 1-6 at 35-36.)

On April 13, 2012, Petitioner, represented by counsel, filed a "Notice of Motion for an Order Vacating the Convictions and Dismissing the Indictment; [or,] Alternatively, Granting the Motion for a New Trial ['2012 Motion']." *Fuscaldo*, 2014 WL 9883917, at \*2. The 2012 Motion

---

[2] Since adjudication of Petitioner's case occurred in 2008, the Appellate Division "appl[ied] the version of the [New Jersey] court rules as they existed at that time[]," including the earlier Rules' relaxation of N.J. Ct. R. 3:22-12's time periods in cases of exceptional circumstances. *Fuscaldo*, 2010 WL 2990813, at \*3 n. 1.

challenged the State's ballistic evidence. Following oral argument, the same judge who decided

Petitioner's two previous PCR petitions concluded that, despite Petitioner's label, the 2012 Motion

was actually a third PCR petition. After hearing argument, the PCR court denied the third PCR

petition. The judge gave a detailed oral explanation in support. Specifically, the judge stated:

> It was not a calculation of mathematical probabilities that led the
> jury to conclude that the defendant's weapon was the murder
> weapon and that the defendant was guilty of the murder. Rather, it
> was the substantial, credible, and persuasive circumstantial evidence
> that led to the defendant's conviction. The ballistics evidence ... was
> but one of many interlocking items of evidence that, taken in
> combination, established this defendant's guilt.

*Fuscaldo*, 2014 WL 9883917, at *2-3. Ultimately, the state court rejected Petitioner's third PCR

petition as untimely under N.J. Ct. R. 3:22–12(a). *Id.* at *3.

Petitioner appealed the denial of his third PCR petition. He raised the following two

arguments:

> [1]     The Defendant Should Be Granted A New Trial Based Upon
> Newly Discovered Evidence; The Court Below Erred In
> Denying The Motion And By Incorrectly Interpreting The
> Motion As A Petition For Post-Conviction Relief [referred
> to as the "Third PCR's New Evidence Claim"]; and

> [2]     The Order Of The Court Below Should Be Reversed As The
> State's Use Of False And/Or Perjured Expert Testimony
> (That It Knew Or Should Have Known Was False) To
> Establish Defendant's Guilt Violated His Right To Due
> Process Under The Fifth, Sixth, And Fourteenth
> Amendments Mandating A Vacation Of His Convictions
> And Dismissal Of The Indictment Or, At The Very Least, A
> New Trial [referred to as the "Third PCR's Expert
> Testimony Claim"].

*Fuscaldo*, 2014 WL 9883917, at *3.

Rejecting both arguments, the Appellate Division stated that the PCR court's

characterization of the 2012 Motion as a third PCR petition was not dispositive, although the PCR

court was correct under state law. Rather, the Appellate Division was "satisfied [that Petitioner's] application was correctly rejected." *Id*. at *3. Petitioner had not demonstrated under state law that he was entitled to a new trial based on newly discovered evidence:

> Our [New Jersey] Supreme Court has recently reaffirmed the standard a court must use in deciding whether to grant or deny a motion for a new trial based on newly discovered evidence: "Evidence is newly discovered and sufficient to warrant the grant of a new trial when it is: (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."

*Fuscaldo*, 2014 WL 9883917, at *4 (quoting *State v. Nash*, 58 A.3d 705, 723 (N.J. 2013) (citing *State v. Carter*, 426 A.2d 501, 508 (N.J. 1981)). Applying this standard, the Appellate Division found Petitioner's "latest attempt at overturning his conviction" to be "without merit." *Fuscaldo*, 2014 WL 9883917, at *4. Plaintiff had not demonstrated the three-pronged state law standard. Instead, Petitioner's "affidavit or report of the ballistics expert merely rehashes what has been presented and rejected at least twice before by the trial court and this court." *Id*. Accordingly, the Appellate Division affirmed denial of Petitioner's third PCR petition. *Id*. On November 6, 2015, the New Jersey Supreme Court denied certification. *State v. Fuscaldo*, 125 A.3d 391 (N.J. 2015).

On June 18, 2016, Petitioner, represented by counsel, filed a motion to file a second or successive § 2254 petition with the Third Circuit. (ECF 1 at 30-31; ECF No. 1-1 at 1-50; ECF No. 1-2 at 1-13; ECF No. 1-7 at 47.) On June 30, 2016, the Third Circuit granted his application. The Third Circuit "stress[ed]," however, that its decision to do so was "tentative":

> [T]he District Court must dismiss the habeas petition for lack of jurisdiction if it finds that the requirements for filing such a petition have not in fact been met. [S]*ee* § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this

section"). Additionally, the District Court is required to determine in the first instance all relevant issues, including timeliness, exhaustion, and procedural default.

(ECF No. 1-8 at 1 (other internal citations omitted).)

On July 12, 2016, Petitioner filed his § 2254 Second Petition with this Court. (ECF No. 1.)

In it, he asserts two grounds for relief:

> [1]   The [Petitioner] should be granted a new trial based upon newly discovered evidence (the affidavit of the defense ballistics expert that contradicts the State's theory of the case); the [Petitioner's] Fourteenth Amendment right to due process [of] a fair trial and Sixth Amendment right to effective counsel were violated [referred to as Petitioner's "New Evidence Claim"].

> [2]   The State's use of false and/or perjured expert testimony (that it knew or should have known was false) to establish [Petitioner's] guilt violated his right to due process under the Fifth, Sixth, and Fourteenth Amendments, mandating a vacation of convictions and dismissal of the indictment or, at the very least, a new trial [referred to as Petitioner's "Expert Testimony Claim"].

(ECF No. 1 at 14, 27.)

On July 23, 2018, this Court ordered Respondents to answer the Petition (ECF No. 8), which they filed on November 21, 2018. (ECF No. 15.) On January 14, 2019, Petitioner filed his traverse in reply. (ECF No. 20.)

## III.   GOVERNING LAW

"In 1996, in AEDPA, Congress, concerned that successive habeas petitions filed in federal district courts still seemed to frustrate finality in the criminal process, amended § 2244 so as to impose tighter constraints … on habeas petitioners invoking § 2254 to present collateral challenges to state criminal convictions." *Zayas v. Immigration & Naturalization Serv.*, 311 F.3d 247, 254 (3d Cir. 2002). Those statutory revisions are set forth in 28 U.S.C. § 2244(b)(1) and (b)(2). The

nature of a petitioner's claims, as between his first and second/successive petitions, determines which statutory provision applies in his or her case.

"If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases. § 2244(b)(1)." *Tyler v. Cain*, 533 U.S. 656, 661-62 (2001). *See* 28 U.S.C. § 2244(b)(1) (a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed"). However, "if the prisoner asserts a claim that was *not* presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions. One of these exceptions is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict. § 2244(b)(2)(B). The other [exception] is for certain claims relying on new rules of constitutional law. § 2244(b)(2)(A)." *Tyler*, 533 U.S. at 661-62. Specifically, the pertinent provisions of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), as revised, state:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless:
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

In the instant case, the Third Circuit expressly directed this Court to address whether the Second Petition's claims satisfy § 2244(b)(2). (ECF No. 1-8.) That directive is consistent with the

AEDPA's statutory language. Petitioner did not assert the Second Petition's New Evidence Claim and Expert Testimony Claim in his § 2254 First Petition. (ECF No. 1-3 at 10; ECF No. 1 at 14, 27.) Therefore, § 2244(b)(2) is the pertinent statutory section for purposes of this Court's present analysis. *See* § 2244(b)(2) (governing claims in a second or successive petition that were "not presented in a prior application"). The Second Petition does not purport to rely on a new rule of constitutional law made retroactive to cases on collateral review by the United States Supreme Court. *See* § 2244(b)(2)(A).[3]

As discussed below, Petitioner does not show that he was unable to previously discover the factual predicates for the § 2254 Second Petition's claims through the exercise of due diligence. *See* § 2244(b)(2)(B)(i).

## IV. ANALYSIS

### A. The New Evidence Claim Fails to Satisfy § 2254(b)

The New Evidence Claim relies upon certain opinions of Petitioner's expert, Dr. Hamby. (ECF No. 1 at 17, 18.) Specifically, Petitioner contends that "[Hamby II] constitutes newly discovered evidence as it relates to the State's evidence as to the shell casings." (ECF No. 1 at 17, 18.)

---

[3] The New Evidence Claim argues that Dr. Hamby's second report "thoroughly discredits the State's entire case at trial that the murder weapon was a Glock 9mm, and since Petitioner owned a Glock 9mm therefore he is guilty." (ECF No. 1 at 19.) The New Evidence Claim, however, relies on the New Jersey Supreme Court decisions in *State v. Carter*, 426 A.2d 501 (N.J. 1981) and *State v. Nash*, 58 A.3d 705 (N.J. 2013). (ECF No. 1 at 21-23.) The Expert Testimony Claim cites to two United States Supreme Court cases for general due process principles; and one opinion of that Court concerning prosecutorial obligations as to exculpatory evidence. (ECF No. 1 at 28-29) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150 (1972); and *Brady v. Maryland*, 373 U.S. 83, 87 (1963).) None of these United States Supreme Court cases cited by Petitioner set forth a rule of constitutional law that was not already in existence at the time of the § 2254 First Petition.

Dr. Hamby's first report in the underlying case is dated March 18, 2008. (ECF No. 1-5 at 49-50 and ECF No. 1-6 at 1 ("Hamby I").) Petitioner submitted Hamby I to the state court with his second PCR petition. (ECF No. 1-5 at 37-50 and ECF No. 1-6 at 1.)[4] In adjudicating the appeal of the denial of the second PCR petition, the Appellate Division found that Hamby I "did not refute the State's evidence on the shell casings, [which] still provide unrefuted evidence that the murder was accomplished with a Glock weapon." *Fuscaldo*, 2010 WL 2990813, at *3. Dr. Hamby's second report is dated June 29, 2011. (ECF No. 1-7 at 15-18 ("Hamby II").) The record suggests that Petitioner filed Hamby II in support of his third PCR petition.[5]

Specifically, Hamby II (1) claims that "[c]ontrary to the State's assertions [at trial] … rectangular firing pin characteristics were not limited to only Glock firearms in 1993" (ECF No. 1-7 at 16); (2) opines that lead bullets such as those found in the Victim "were not then (or now) standard commercial loadings for the type of ammunition usually fired in 9mm caliber Glock Model 17 or 19 pistols" (*id.*); (3) claims Dobak's "direct testimony that Glock is the only firearm manufacturer that produces firearms rifled using polygonal rifling with 6 lands and grooves, right hand twist" is "in error"; (4) alleges that "there were other firearms manufacturers that in 1993

---

[4] The record also contains a version of Hamby I dated October 6, 2009. (ECF No. 1-7 at 12-14.) Both the March 18, 2008 and October 6, 2009 versions of Hamby I in the record before this Court are identical in substance. They appear to differ only as to the affidavits' date on their final pages. (*See* ECF No. 1-5 at 49-50 and ECF No. 1-6 at 1 (March 18, 2008); ECF No. 1-7 at 12-14 (October 6, 2009).) For purposes of the instant Opinion, this date difference is not apposite to the present analysis under § 2244(b)(2)(B)(i). Neither version of Hamby I constitutes newly discovered evidence for purposes of § 2244(b)(2) analysis, as explained *infra*.

[5] Petitioner filed his third PCR petition on or about April 13, 2012. (ECF No. 1-7 at 45.) The record in the current matter contains only the title page and table of contents for counsel's brief in support of the April 13, 2012 third PCR filing. (*Id.* at 44-46.) The record does not demonstrate which particular "newly discovered evidence" Petitioner relied upon in support of his third PCR petition. Affording Petitioner the benefit of the doubt, this Court will construe the record in this matter to suggest that Petitioner filed the June 29, 2011 Hamby II in support of his third PCR petition.

were using polygonal rifling" (*id.*); and (5) concludes there is "no direct link [that] can be established between the fired cartridge cases (shell casings) found at the scene and the bullets recovered from the [V]ictim." (*Id.* at 17-18.)

However, Petitioner does not point to any evidence in Hamby II that did not already exist at the time of Hamby I or the First Petition. Rather, Hamby II states only that Dr. Hamby considered "various materials" when writing Hamby II. (ECF No. 1-7 at 16.) Comparison of Hamby I and Hamby II (*see* ECF No. 1-5 at 49-50; ECF No. 1-6 at 1; ECF No. 1-7 at 15-16) suggests that the only specific item considered in Hamby II but not used by Hamby I was the report of New Jersey State Police examiner Sergeant G. Burkhardt. (*See* ECF No. 1-7 at 16.) The Burkhardt report was, however, available to Petitioner at the time of trial. Dobak testified about that report at trial. (ECF No. 15-3 at 25.)

In addition, Hamby II does not provide new conclusions as compared to Hamby I. For example, both Hamby I and Hamby II challenge Dobak's testimony that "Glock is the only firearms manufacturer that produces firearms rifled using polygonal rifling with 6 lands and grooves, right hand twist." (ECF No. 1-7 at 13 and 16.) Hamby II appears cumulative of Hamby I in this respect. (ECF No. 1-7 at 16.) At most, Hamby II explicitly imports various sections of Dobak's trial testimony that did not actually appear in Hamby I. (ECF No. 1-7 at 16-17.) Nevertheless, the Dobak testimony was available at the time of trial and the § 2254 First Petition. (*See* ECF No. 15-3 at 25.) Dr. Hamby's election to expressly include those Dobak testimony extracts in Hamby II but not in Hamby I does not render those sections of testimony "new" for purposes of the instant analysis. Indeed, during Petitioner's appeal of the denial of his third PCR application, the Appellate Division found that Hamby II "merely rehashes what has been presented and rejected at least twice before by the trial court and this court." *Fuscaldo*, 2014 WL 9883917,

at *4. Petitioner has not demonstrated that the Appellate Division was objectively unreasonable in characterizing Hamby II as merely cumulative of Hamby I. If, as Dr. Hamby suggests, the shell casing indentation and polygonal rifling characteristics of the relevant Glock firearm model *were available in 1993* (ECF No. 1-5 at 49-50; ECF No. 1-6 at 1; ECF No. 1-7 at 15-16)), it appears that the information was available to Petitioner at that time. Certainly, it undercuts any claim that Petitioner could not have discovered these facts without reasonable diligence until twenty-five years later.

Hamby II also does not indicate the basis for its conclusion that other nine-millimeter manufacturers in 1993 could have produced the same results as a Glock's firing pin and rifling characteristics. (ECF No. 1-7 at 16.) Moreover, Dr. Hamby characterized the record before him as incomplete when he wrote Hamby II. He expressly states in Hamby II that "it would be quite helpful" to have certain other specific information available, in order "[t]o properly evaluate" the issues discussed in Hamby II. (ECF No. 1-7 at 18.) Given Dr. Hamby's professed need in Hamby II for additional information, Petitioner has not demonstrated that Hamby II would have changed reasonable jurors' minds. Petitioner has not shown that Hamby II's conclusions clearly and convincingly would have persuaded jurors to find Petitioner not guilty.

Moreover, the record suggests that Hamby II might be not only cumulative of Hamby I's conclusions and supporting evidence, but also detrimental to the substance of Petitioner's arguments as a whole. Hamby I opines that Dobak's "statement … that Glock is the only firearms manufacturer that produces firearms rifled using polygonal rifling with 6 lands and grooves, right hand twist" is "in error" because "other firearms manufacturers in 1993 were using polygonal rifling for their firearms." (ECF No. 1-7 at 13.) Hamby II opines precisely the same, adding: "These firearms include Glock, Heckler & Koch, and IMI." (ECF No. 1-7 at 16.) Dr. Hamby does not

identify specific new evidence beyond that which he used for Hamby I, if any, supports this add-on conclusion in Hamby II. In any event, Glock is the only firearm brand that Dr. Hamby identifies in both paragraph one (regarding rectangular rifling pin) and paragraph three (regarding polygonal rifling) of Hamby II. (ECF No. 1-7 at 16.) In other words, Glock is the only firearm brand identified in Hamby II that meets both the rectangular firing pin marks and polygonal rifling characteristics (*see* ECF No. 15-2 at 61, 69) of the weapon that killed the Victim. To this end, Hamby II arguably supports the State's theories that only a 1993 Glock handgun uniquely: could have left the type of indentations on the shell casings found at the crime scene; and had the sort of polygonal rifling that could fire the lead bullets found at the scene.

In sum, the Second Petition's New Evidence Claim does not identify newly discovered evidence in the contents, supporting materials, or conclusions of Hamby II. Petitioner equates what he perceives as the *strength* of Hamby II's exculpatory value with purported *newness* of that report. (*See*, *e.g.*, ECF No. 1 at 21 (Hamby II "raises reasonable doubt about the caliber of weapon that was used in this crime").) *Id.* Exculpatory value and newness are independent and distinct characteristics.[6]

For all of these reasons, the New Evidence Claims does not meet § 2244(b)(2)(B)(i).

### B. The Expert Testimony Claim Fails To Satisfy § 2254(b)(2)

Petitioner does not argue, much less demonstrate, that the Expert Testimony Claim's factual predicates were undiscoverable to him prior to trial or the Second Petition. *See* § 2244(b)(2)(B)(i). Instead, the Expert Testimony Claim alleges that the State obtained Petitioner's

---

[6] The Court notes that Petitioner also seems to suggest that because the Appellate Division did not, according to him, comprehend the full import of Hamby I, Hamby II's re-interpretation of Hamby I is actually "newly discovered." Petitioner cites no authority supporting this approach to newly-discovered evidence. This Court has found no such cases either.

conviction by "present[ing] false and perjured testimony" from Burkhart, Dobak, and Meyers. (ECF No. 1 at 28-29.) Petitioner's contentions about the truthfulness and veracity of testimony do not speak to § 2244(b)(2)(B)(i)'s time-related element of the "new" discovery of claims' factual predicates. Rather, the § 2254 Expert Testimony Claim's factual predicates are the same as those in the Third PCR's Expert Testimony Claim. (*Cf.* ECF No. 1 at 14-27; *Fuscaldo*, 2014 WL 9883917, at *3-4.) For this reason, the Expert Testimony Claim does not meet § 2244(b)(2)(B)(i).

Petitioner also does not show that the facts underlying the New Evidence Claim and Expert Testimony Claim "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." *See* § 2244(b)(2)(B)(ii). As this Court noted in its July 15, 1999 decision denying the § 2254 First Petition, the Appellate Division during direct appeal made "an objectively reasonable determination of the facts in determining that overwhelmingly sufficient evidence support[ed] the Petitioner's conviction for murder." (ECF No. 1-3 at 14.) This Court explained as follows:

> The State established that Petitioner had the opportunity, means, motive and state of mind to murder Craig Haddock. The [V]ictim was last seen alive in Petitioner's car leaving Hoboken after an evening of drinking at around 3:23 a.m. on the morning of January 23, 1993. The car was travelling in the direction of the Belleville Turnpike, the location where the body was found. Expert testimony placed the time of death at around one to two hours after the [V]ictim ceased alcohol ingestion, at least twenty-four hours prior to the discovery of the body at approximately 5:00p.m. on January 24, 1993. This evidence presents reasonable circumstantial evidence sufficient to place Petitioner with the [V]ictim at the time of the murder.

> The State presented further evidence outlining a pattern of behavior exhibited by Petitioner after the murder which could reasonably be viewed as attempts to conceal the crime and as demonstrative of a consciousness of guilt. Specifically, Petitioner did not answer the repeated calls of the victim's fiancée and refused to help the

[V]ictim's family file a missing persons report. The State presented evidence that the story told by Petitioner to the [V]ictim's fiancée and family that the [V]ictim had left with new friends to go to a diner was false as the [V]ictim had an empty stomach at the time of the murder and was killed very shortly after last being seen alive in Petitioner's car. Ballistic evidence identified the type of gun used to murder the [V]ictim as the same make and model owned and registered by Petitioner. Although Petitioner initially denied to the police that he owned any gun at all, the police found an instruction manual for the handgun, a care and use guide, a warranty, and a firearm safety handbook. No weapon, holster ammunition or cleaning kit were found in Petitioner's home. The murder weapon was never recovered. It would be reasonable to infer that Petitioner disposed of his handgun after committing the murder and subsequently lied about owning a gun. Finally, the State presented evidence suggesting a motive for Petitioner to murder the [V]ictim: the close relationship between the [V]ictim and Petitioner's wife.

In light of all the presented facts, together with the evidence of Petitioner's attitude and conduct after the [V]ictim was reported missing, it was certainly objectively reasonable for the Appellate Division to determine that sufficient evidence existed for a jury to reasonably infer that Petitioner murdered Craig Haddock.

(ECF No. 1-3 at 6-7.)

The record shows that, in the interim between the § 2254 First Petition and Petitioner's third PCR petition, the state courts did not change their impression of the strength of the evidence against Petitioner. In the opinion denying Petitioner's third PCR application, the state judge found:

In the absence of evidence excluding th[e] possibility [that the defendant's weapon could possibly be the murder weapon], it matters not whether the odds were one in a thousand, one in ten thousand, or even one in a million. None of those possibilities would amount to proof beyond a reasonable doubt to a rational juror. It was not a calculation of mathematical probabilities that led the jury to conclude that the defendant's weapon was the murder weapon and that the defendant was guilty of the murder. Rather, it was the substantial, credible, and persuasive circumstantial evidence that led to the defendant's conviction. The ballistics evidence ... was but one of many interlocking items of evidence that, taken in combination, established this defendant's guilt.

*Fuscaldo*, 2014 WL 9883917, at *2-3.

The facts underlying the New Evidence Claim and Expert Testimony Claim do not show by clear and convincing evidence that no reasonable juror would have found Petitioner guilty. First, Hamby II does not offer any newly-discovered evidence beyond that which existed when Dr. Hamby wrote Hamby I. *See supra.* Second, the credibility of witnesses Burkhart, Dobak, and Meyers was for the jury to weigh at trial, not for Petitioner to assert in a successive habeas petition.

Furthermore, Petitioner has not, in the first instance, even shown that there was any constitutional error by any state court at any stage of his proceedings during trial, direct appeal, or PCR. *See* § 2244(b)(2)(B)(ii). Nothing in the § 2254 Second Petition speaks to § 2244(b)(2)(B)(ii)'s requisite showing that the New Evidence Claim and/or Expert Testimony Claim's underlying facts clearly and convincingly establish that no reasonable juror would have found Petitioner guilty. For these reasons, Petitioner has not met the requisites of § 2244(b)(2)(B)(ii).

For all of these reasons, the Second Petition does not meet the requirements for filing a second or successive petition as set forth in § 2244(b)(2). The Court dismisses the Second Petition for lack of jurisdiction. *See Watford,* 2011 WL 2792463, at *2 (citing *Hatches v. Schultz,* 381 F. App'x 134, 137 (3d Cir. 2010)).

## C. Aside From Its Failure To Meet § 2244(b)(2), The Second Petition Fails on the Merits

Beyond directives for this Court to consider § 2244(b)(2), the Third Circuit also instructed this Court to determine "all relevant issues, including timeliness,[7] exhaustion, and procedural

---

[7] Respondents' answer is silent as to the § 2254 Second Petition's timeliness, or lack thereof. (*See* ECF No. 15.) The Second Petition does, however, appear to be time-barred, in addition to its failure on the merits.

Under the AEDPA, Congress prescribed a one-year period of limitation for the filing of federal habeas corpus petitions by state prisoners. *See Douglas v. Horn,* 359 F.3d 257, 261 (2004); 28 U.S.C. § 2244(d)(1). Except in extremely limited circumstances, a prisoner must file one all-inclusive petition within one year of the date when judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See*

default[8]" as to the Second Petition. (ECF No. 1-8.) As discussed below, the Court determines that,

2244(d). Petitioner here did not seek a writ of certiorari from the United States Supreme Court on direct appeal. Therefore, his conviction became final ninety days after entry of the New Jersey Supreme Court's November 10, 1997 order denying certification during direct appeal – *i.e.*, February 8, 1998. *See* 28 U.S.C. § 2244(d)(1)(A). The AEDPA's one-year limitations period began to run on February 9, 1998, and it expired one year later. Petitioner filed his § 2254 First Petition on November 17, 1998. (ECF No. 1-3 at 10.) He filed his § 2254 Second Petition on July 12, 2016. (ECF No. 1.) His Second Petition is therefore untimely under the AEDPA, unless saved by statutory or equitable tolling. Neither option appears applicable.

Under § 2244(d)(2)'s statutory tolling exception, the AEDPA's one-year limitation period is tolled during the time a properly filed application for state PCR relief is pending. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003); *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir.), *cert. denied*, *Horn v. Fahy*, 534 U.S. 944 (2001). By the time Petitioner filed his first PCR petition on April 30, 2001, the AEDPA's one-year limitations period had already expired on February 9, 1999. Therefore, statutory tolling is unavailable. The AEDPA's February 9, 1999 one-year filing deadline expired well before Petitioner filed his § 2254 Second Petition on July 12, 2016. His § 2254 First Petition does not act to toll the AEPDA's statute of limitations either. *See* § 2244(d)(2).

Petitioner has not offered any argument that this case warrants equitable tolling. To claim equitable tolling, a habeas petitioner must show: (1) that he faced "extraordinary circumstances" that stood in the way of timely filing, and (2) that he exercised "reasonable diligence" in pursuing his rights throughout the period to be tolled. *Holland v. Florida*, 560 U.S. 631 (2010); *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (quoting *Pabon*, 654 F.3d at 399.

This Court notes the foregoing in accordance with the Third Circuit's directive. The Court does not, however, reach a final decision on timeliness, because Respondents did not raise the issue, and Petitioner has not had an opportunity to argue statutory or equitable tolling.

[8] Respondents' answer is silent on the issue of procedural default. (*See* ECF No. 15.) *See also Gray v. Netherland*, 518 U.S. 152, 165-66 (1996) (procedural default is an affirmative defense for the government, and where the government fails to raise an affirmative defense in a timely manner, it "lose[s] the right to assert the defense thereafter"). The Court nevertheless briefly considers the procedural default issue in accordance with the Third Circuit's directive. (*See* ECF No. 1-8.)

Under the procedural default doctrine, a federal court may not grant habeas relief if the state court's decision rests on a prisoner's violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). Federal courts may not consider the merits of such procedurally defaulted claims unless (1) the petitioner establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of federal law; or (2) the prisoner demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Leyva*, 504 F.3d at 366; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner asserted the New Evidence Claim and Expert Witness Claim in his third PCR petition. *Fuscaldo*, 2014 WL 9883917, at *3. The PCR court rejected his third PCR petition as untimely under adequate and independent N.J. Ct. R. 3:22–12(a). *Id. See also Peterson v. Warren*,

even aside from failure to meet § 2244(b)(2), the Second Petition is without merit.

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each of his claims. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

28 U.S.C. § 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where a state court adjudicated petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S.

---

No. 13-4250, 2018 WL 3054680, at *19 (D.N.J. June 20, 2018); *State v. Milne*, 842 A.2d 140 (N.J. 2004). The Appellate Division affirmed rejection of the third PCR petition. *Id.*

This Court does not rule definitively on the issue of procedural default because Respondents did not raise the issue. Petitioner therefore did not have an opportunity to argue cause and prejudice under that doctrine; and the § 2254 Second Petition fails, in any event, to meet § 2244(b)(2) and § 2254(d) as explained herein.

37, 40 (2012) (quoting 28 U.S.C. § 2254(d) ). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

During Petitioner's appeal of denial of his third PCR petition, the Appellate Division rejected the New Evidence Claim, finding that Hamby II was not newly discovered evidence warranting a new trial. The Appellate Division explained: "The affidavit or report of the ballistics expert merely rehashes what has been presented and rejected at least twice before by the trial court and this court." *Fuscaldo*, 2014 WL 9883917, at *4 (citing *Nash*, 58 A.3d 705 and *Carter*, 426 A.2d 501). Petitioner fails to demonstrate that the Appellate Division's opinion was contrary to, or an unreasonable application of, clearly established federal law. He does not cite to any United States Supreme Court precedent under which Hamby II constitutes newly discovered evidence

warranting a new trial. (*See* ECF No. 1 at 14-27.) His reliance on the New Jersey Supreme Court's decisions in *Nash*, 58 A.3d 705, and *Carter*, 426 A.2d 501, does not sustain his burden on habeas review. *See* § 2254(d). In addition, the Appellate Division itself relied exclusively upon *state* law in rejecting Hamby II as newly discovered evidence. *Fuscaldo*, 2014 WL 9883917, at *4 (citing *Nash* and *Carter*). Petitioner does not identify any United States Supreme Court case, and this Court has not found any, under which the state court's rejection of Hamby II as "new evidence" was unconstitutional.

The "recent" Third Circuit opinions that Petitioner cites in his traverse do not change this analysis. (*See* ECF No. 20 at 34-35.) Those decisions are distinguishable from Petitioner's case. In *Haskell v. Superintendent Greene SCI*, 866 F.3d 139 (3d Cir. 2017), the Third Circuit held that the State violates the Fourteenth Amendment's due process guarantees when it knowingly presents or fails to correct false testimony. *Id*. at 145-46. In *Haskell*, both the witness and the prosecutor "knew that [the witness] expected to receive help in her own pending criminal matters in exchange for her testimony." *Id*. at 140. Petitioner has not made any similar demonstration here with respect to the prosecutor and the State's expert witnesses. Nor has he shown that Meyers's and Dobak's testimony was demonstrably "false" in the first instance.

In *Dennis v. Sec'y, Pennsylvania Dep't of Corr*., 834 F.3d 263 (3d Cir. 2016), the State did not disclose to the defense three pieces of evidence. First, a receipt in police possession objectively impeached a key State witness and bolstered the defendant's alibi. *Id*. at 285. Second, a suppressed police activity sheet revealed that two days after the victim's murder, a key State eyewitness made a materially inconsistent statement. *Id*. at 296-97. Defense counsel "could have used [the] inconsistent statement as an effective means of impeachment during trial." *Id*. at 298. Third, documents regarding a potential lead on a perpetrator other than the defendant were also

undisclosed by the prosecution. *Id*. at 305. The Third Circuit affirmed the conditional grant of habeas relief, pending a new trial. The *Dennis* court found there was "a reasonable probability that the outcome of the trial would have been different" if these pieces of evidence had been disclosed. *Id*. at 311. In comparison, Petitioner has not shown that the prosecution failed to disclose evidence. The Court finds *Dennis* materially distinguishable from the instant case.

In *Kamienski v. Hendricks*, 332 F. App'x 740 (3d Cir. 2009), the Third Circuit reversed denial of habeas relief on a state murder conviction because the evidence did not support it. The *Kamienski* court found that the record did "not contain evidence that would allow an inference that [defendant] purposely or knowingly assisted [co-defendant] in killing the [victims]. [The co-defendant] was clearly the trigger man, and there is nothing to suggest that [defendant] had any part in actually causing the [victims'] death." *Id*. at 751. In Petitioner's case, however, there was "substantial, credible, and persuasive circumstantial evidence that led to [Petitioner's] conviction. The ballistics evidence ... was but one of many interlocking items of evidence that, taken in combination, established this defendant's guilt." *Fuscaldo*, 2014 WL 9883917, at *2-3. "The State established that Petitioner had the opportunity, means, motive and state of mind to murder [the Victim]." "[The] evidence present[ed] reasonable circumstantial evidence sufficient to place Petitioner with the [V]ictim at the time of the murder." "The State presented further evidence outlining a pattern of behavior exhibited by Petitioner after the murder which could reasonably be viewed as attempts to conceal the crime and as demonstrative of a consciousness of guilt." (ECF No. 1-3 at 6-7.) The Court finds *Kamienski* materially distinguishable from the instant case.

Petitioner argues that Dobak and Meyers were "unequivocally wrong" in their ballistics testimony at trial. (ECF No. 1 at 28, 29.) He reasons that they therefore "gave false and perjured testimony." (*Id*.) However, the Expert Testimony Claim does not identify the particular portion of

either witness's testimony that Petitioner alleges was false and perjured. (*See* ECF No. 1 at 27-30.)

At trial, Dobak -- a firearm identification technician -- offered his opinion that the Victim was shot from a distance of at least two feet. (ECF No. 15-3 at 12, 17-18.) Dobak had analyzed both bullets and shell casings. (*Id*. at 25, 26-28, 30.) He determined that all spent shell casings recovered at the crime scene were fired from the same gun. (*Id*. at 30, 47-48.) After reviewing the unique rifling marks on the shells and the condition of the slugs, he testified that the gun used to kill the Victim was a Glock nine-millimeter. (*Id*. at 27-30, 45-48.) Dobak testified that only a Glock firearm produces the polygonal rifling evidenced on the bullets. (*Id*. at 23-24; *Fuscaldo*, 2010 WL 2990813, at *2.)

Meyers was trained by firearm manufacturer Glock as an armourer, a specialist in Glock-made weapons' repair, disassembly, reassembly, and maintenance. (ECF No. 15-2 at 47.) Meyers conducted test firings and photographed shell casings from various sample firing pins such as Glock, Colt, Smith, and Wesson in order to show their indents. (*Id*. at 47, 49-50; ECF No. 15-3 at 9.) He testified at trial as to how a Glock nine-millimeter model operates and as to its unique characteristics. (ECF No. 15-2 at 68-69 ("Glock uses a unique [barrel] design. [T]he barrel [is] what transfer[s] marks to the bullet nose").) He testified that the shell casings found near the Victim's body had been fired from a Glock because they had Glock models' unique rectangular markings. *Fuscaldo*, 2010 WL 2990813, at *2. Meyers stated that the perpetrator here had used a Glock, based upon the firing pin's rectangular mark left on the casings. Such a mark was unique to Glocks in 1993. (ECF No. 15-2 at 61, 69.)

A criminal defendant bears the affirmative burden of establishing his entitlement to relief on a habeas petition. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). In addition, Habeas Corpus Rule 2(c) provides that petitions must "specify all the grounds for relief available to the

petitioner" and "state the facts supporting each ground." *See also* Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C. § 2254, p. 471 ("[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error" (internal quotation marks omitted)). A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the respondent should be ordered to "show cause why the writ should not be granted." 28 U.S.C. § 2243. The Third Circuit has held that vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court. *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000); *United States v. Dawson,* 857 F.2d 923, 928 (3d Cir. 1988); *see also United States v. Dawson,* 857 F.2d 923, 928 (3d Cir. 1988) (finding summary dismissal without the filing of an answer warranted when the petition contains vague and conclusory allegations). The Expert Testimony Claim's vague and non-specific reference to "false and/or perjured expert testimony" (ECF No. 1 at 27) fails to satisfy the particularity requirement. Petitioner's generalized assertion leaves this Court unable to ascertain the specific testimony as to which he levels his allegations, let alone any merits of such arguments. (*See*, *e.g.*, ECF No. 1 at 28 ("[T]he falsity of the ballistics testimony") and 29 ("[T]he testimony in question"); ECF No. 20 at 56 ("Petitioner submits that there is no need to cite specific[] [expert testimony] since [the] entire testimony of Meyers is incorrect").)

Petitioner also fails to demonstrate that the Appellate Division's opinion affirming denial of his third PCR petition's Expert Testimony Claim was an unreasonable application of clearly established federal law. He does not cite to any United States Supreme Court precedent (1) under which Meyers's and Dobak's testimony was false or perjurious; (2) under which the State's use of their testimony violated Petitioner's Fifth, Sixth or Fourteenth Amendment rights; or (3) under

which the State's use of their testimony was unconstitutional so as to warrant vacation of Petitioner's conviction or a new trial. (*See* ECF No. 1 at 27-30.) Rather, the Supreme Court decisions upon which Petitioner relies are not only factually and materially distinguishable from his case, but also do not establish any law warranting habeas relief here.

Petitioner cites *Darden v. Wainwright*, 477 U.S. 168 (1986). (*See* ECF No. 1 at 30.) In *Darden*, the issue was "whether the [prosecutor's closing argument] comments [about blame for the crime, the propriety of the death penalty, and the defense's use of the word "animal"] so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181. Conversely, Petitioner here has not identified the particular expert witness statements that he alleges were false and/or perjurious. Nor has he shown that that they had the effect of "manipulat[ing] or misstat[ing] the evidence [or] implicat[ing] specific rights of the accused." *See Darden*, 477 U.S. at 182 (involving "the right to counsel or the right to remain silent").

Petitioner also cites *Napue v. People of State of Illinois*, 360 U.S. 264 (1959). (*See* ECF No. 1 at 28.) In *Napue*, a State's witness falsely testified that he had received no promise of consideration -- *i.e.*, a reduction in his own sentence -- in return for his testimony. However, the Illinois Supreme Court found that the State's attorney had, in fact, made such a promise. *Napue*, 360 U.S. at 265, 267-68. The United States Supreme Court ruled that the prosecutor's failure at trial to correct the witness's testimony that he knew to be false denied the petitioner due process. *Id*. at 272. Unlike the *Napue* petitioner, Petitioner here does not allege that Meyers or Dobak "had a [personal] interest in testifying against [him]." *See Napue*, 360 U.S. at 270. Furthermore, the state court in *Napue* expressly found that the prosecutor had lied about making promises to the witness in exchange for testimony. 360 U.S. at 267-68. No state court made any similar finding about the prosecutor, Meyers, or Dobak. Thus, *Napue* is materially distinguishable. While

Petitioner does argue that the prosecutor "knew or should have known that [Meyers's and Dobak's testimony] was false" (ECF No. 1 at 28), Petitioner's criticism of falsity is his own conclusion about the witnesses' testimony. (*See*, *e.g.*, ECF No. 20 at 38 and 39 ("[B]oth supposed experts are wrong [about ballistics evidence]"); *id*. at 40 ("[T]he erroneous and false testimony of the State's experts").)

Finally, Petitioner cites *Giglio v. United States*, 405 U.S. 150 (1972). (*See* ECF No. 1 at 28.) Petitioner is correct that the government may not convict a criminal defendant based upon false evidence. (ECF No. 1 at 28.) However, he has not specifically pointed to any false testimony by the State's expert witnesses, much less shown that it wrongfully led to his conviction. *See Giglio*, 405 U.S. at 153-54 (a new trial is required if it is reasonably likely that false testimony affected the jury's judgment).

For these reasons, aside from the § 2254 Second Petition's failure to meet § 2244(b)(2) as explained, the Second Petition's claims are without merit.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's determination that it lacks jurisdiction under § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section"). *See also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner has failed to satisfy this standard, the Court denies a certificate of appealability.

**V. CONCLUSION**

For the foregoing reasons, Petitioner's Second Petition is denied. A certificate of appealability will not issue. An appropriate order accompanies this Opinion.

October 4, 2019                          s/ John Michael Vazquez
Date                                     JOHN MICHAEL VAZQUEZ
                                         United States District Judge